John L. Smaha, Esq., Bar No. 95855
Gustavo E. Bravo, Esq. Bar No. 218752
**SMAHA LAW GROUP**
7860 Mission Center Court, Suite 100
San Diego, California 92108
Telephone:   (619) 688-1557
Facsimile:    (619) 688-1558

Attorneys for Debtor, Wave House Belmont Park, LLC

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>WAVE HOUSE BELMONT PARK, LLC<br><br>Debtor. | CASE NO. 10-19663-LT11<br><br>Chapter 11<br><br>EMERGENCY MOTION FOR USE OF CASH COLLATERAL; (EAST WEST BANK) |

COMES NOW Debtor, Wave House Belmont Park, LLC (the "Debtor") and hereby requests that the court make an order authorizing the interim use of cash collateral and for adequate protection of the secured creditor of the Debtor's cash collateral, East West Bank ("EWB").

## I.
## RELIEF REQUESTED

The Debtor seeks interim use of cash collateral in accordance with the attached Stipulation for Interim Use of Cash Collateral and the attached projection thereto. As reflected by the projection, the Debtor is only seeking to pay its reasonable, ordinary and necessary operating expenses in order to continue operations. The Debtor seeks to provide EWB with adequate protection as EWB is the only secured creditor holding an interest in the

Debtor's cash collateral in relation to the operations of the commercial properties located at 3106-3146 Mission Boulevard and 3105-3125 Ocean Front Walk, in the City of San Diego, County of San Diego (the "Subject Property"). The Subject Property is commonly referred to as Belmont Park and consists of the amusement park itself and various surrounding buildings, consisting of shops, restaurants and other commercial use buildings.

## II.

## FACTUAL BACKGROUND

The Debtor is the owner of a leasehold estate in that certain real property identified above as the Subject Property. Debtor is the lessee, by assignment, under that certain Percentage Lease dated March 4, 1987, by and between the City of San Diego and Belmont Park Associates, the original lessee, as amended by tahat ceratin Operating Memorandum to Percentage Lease dated December 23, 1987, that certain Second Operating Memorandum to Percentage Lease dated December 11, 1990, that certain Third Operating Memorandum to Percentage Lease dated February 25, 1991, that certain Fourth Operating Memorandum to Percentage Lease dated August 12, 1991, and that certain Fifth Operating Memorandum to Percentage Lease dated June 26, 2000 commonly identified as the Master Lease. (See Declaration of Thomas Lochtefeld).

On or about February 12, 2008, the Debtor obtained a loan from EWB in the amount of $17,000,000 in order to improve various real properties on the Subject Property, to consolidate Debtor's debt and to solidify Debtor's cash holdings for operations. As part of the loan agreement, the Debtor granted a Leasehold Deed of Trust to EWB with an assignment of rents and fixture filing. The Leasehold Deed of Trust was recorded on or about February 12, 2008. EWB further filed a UCC Statement on or about February 12, 2008 in order to perfect its security interest on the Debtor's rent and personal property. (See Declaration of Thomas Lochtefeld).

The Debtor's Subject Property generates substantial gross income. Based on Debtor's previous operations and projecting forward the previous operations over the next several months, the Debtor anticipates generating gross revenue of $874,102.00 for November,

December and January ($258,130 for November, $294,224 for December and $321,748 for January 2011). The Debtor anticipates having net earnings of $449,551 a month over that same three month period ($117,146 for November, $149,284 for December and $183,121 for January 2011). The projections provided with the stipulation are based upon Debtor's previous operations as Debtor has operated and maintained the Subject Property for over twenty years and has an established basis upon which to generate the projected income and expenses for the Subject Property. The net earnings anticipated by the Debtor would allow the Debtor to make full payments to EWB of their mortgage obligation, currently $111,000 a month.(See Declaration of Thomas Lochtefeld).

The projected budgets for the Debtor provide for a monthly rent payment of $5,833.00 to the City of San Diego. There is an ongoing dispute with the City of San Diego on what the correct lease amount is and the Debtor shall shortly be filing an action against the City of San Diego for declaratory relief on this ongoing dispute. The Debtor shall make the payment of $5,833.00 and shall increase or reduce this payment based upon the findings of the court that receives and ultimately decides the declaratory relief action by the Debtor. Debtor shall continue to make these payments with cash collateral until such time as the declaratory relief action is resolved unless further court order, either by this Court or by another court handling the declaratory relief action, instructs the Debtor to do otherwise. (See Declaration of Thomas Lochtefeld). The Stipulation provides that EWB may elect to advance funds to Debtor for the sole purpose of curing alleged pre-petition arrearages allegedly owed to the City of San Diego, at which EWB would have the right to request a super-priority lien for any such advances to Debtor.

## III.

## LEGAL BASIS FOR RELIEF

A.  *A Debtor May Use Cash Collateral With the Consent of the Creditor or Authorization of This Court.*

11 U.S.C. § 363(c)(2) of the United States Bankruptcy Code provides in pertinent part:

> "The trustee may not use, sell, or lease cash collateral... unless–
> (1)  each entity that has an interest in such cash collateral consents; or
> (2)  The court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

The Debtor seeks authority of this court to use cash collateral to continue as a business and to protect EWB and unsecured creditors. As indicated above, EWB and Debtor have entered into a stipulation to use cash collateral, as such the Debtor seeks the use of cash collateral through this motion with a stipulation already in place.

Section 363(c) authorizes the use of cash collateral "in accordance with the provisions of this section." Section 363(e) directs the Court to condition the use of the cash collateral "as is necessary to provide adequate protection to the creditors." The term "adequate protection" is not defined in the Bankruptcy Code. 11 U.S.C. Section 361 provides examples of what may be deemed to constitute adequate protection, including replacement liens to the extent that the proposed use results in a decrease in the value of the creditor's interest in the collateral or granting any other relief which will result in the equivalent of the creditor's interest in the collateral. The concept of adequate protection is determined on a case by case basis and allows for maximum flexibility in structuring a proposal for adequate protection. (See *In re Certified Corp.* (1985) 51 B.R. 768, 770).

The Debtor has received the consent of the secured creditor, EWB, to use cash collateral for an interim period. As such, the Debtor may still a noticed motion on the use of cash collateral. However, the noticed motion will likely not be heard for as much as one month and, for the time being, Debtor will need to maintain the Subject Property to make sure the Subject Property remains in good condition and to ensure that the Subject Property does not lose any of the tenants that currently generate substantial income for the Subject Property and for EWB's benefit. Hence the filing of this motion.

To obtain Court authorization for the use of cash collateral, a debtor must establish that the interests of the creditors holding liens on the collateral will remain adequately protected. (See *United Savings Association Inc. of Texas v. Timbers of Inwood Forest* (1988) 484 U.S. 365). In *Timbers* the Supreme Court held that the interest in the property entitled

1 to adequate protection under the Code is no more than the value of the collateral that is subject to the secured creditor's lien. Under *Timbers*, the debtor is required to show that the creditors' alleged collateral will not decline or deteriorate in value under the debtor's proposed use of cash. (See *Id.* at 633). When the Court finds that there is no decline or depreciation in the value of the collateral, the secured creditor is not entitled to any adequate protection payments other than a replacement lien in post-petition rents. (See *In re Weinstein*, (199) 227 B.R. 284 (9th Cir. BAP); See also *In re Elmiro Litho*, (1994) 174 B.R. 892).

B.  *Secured Creditors Are Adequately Protected and The Use of Cash Collateral Shall Maintain Creditors' Interest In the Subject Property.*

As provided above, EWB has a secured claim against the Debtor's Leasehold interest in the Subject Property and the Debtor's cash collateral. EWB's security interest is fully protected by the value of the lease on the Subject Property and, as such, the Debtor must maintain that lease in order to adequately protect EWB. It is possible that EWB is not entitled to adequate protection payments given its leasehold deed of trust interest. However, the Debtor wishes to continue to make contractual payments on the debt and is willing to provide "adequate protection" to EWB, by making the payment on EWB's note at the original monthly payment of interest and principal of $111,000.00 and to provide a replacement lien on all net proceeds from the gross income of the Subject Property.

///

////

The use of cash collateral is clearly necessary to maintain the ongoing operations of the Debtor and, most importantly, to maintain the rental income of the Subject Property at or above its current level. Debtor's insiders are not currently receiving any distributions from the Debtor's operation of the Subject Property and any retained earnings would be maintained by the Debtor in a separate Debtor-In-Possession (DIP) cash collateral account.

///

///

C. *Debtor Only Seeks to Use Cash Collateral For Ordinary Expenses.*

In *In re Cardinal Industries, Inc.* (1990) 118 B.R. 971 the Bankruptcy Court set out the necessary and reasonable for which the court may allow the use of cash collateral by the debtor:

(1) All payroll and normal and reasonable employee expenses, including post-petition payroll taxes for employees located at the property;

(2) Utilities, equipment leases, insurance and similar expenses necessary to operate the property;

(3) Reasonable fees under management and marketing agreements;

(4) Ordinary and necessary repairs and maintenance to permit the continued use and operation of the property, but not, without consent of the Lender, any expenditure considered to be a capital improvement;

(5) Ordinary advertising and marketing expenses;

(6) Taxes and government charges accruing after the bankruptcy filings and attributed to the property;

(7) Reasonable bookkeeping and accounting fees to the entity chosen by each Debtor to perform these services for the property; and

(8) Other charges incurred after the filing of the petition in bankruptcy which are necessary to conduct the debtor's normal business operations.

(118B.R. at 981-982).

In the instant matter, the Debtor is seeking permission only to pay the reasonable and necessary expenses of running and operating the Subject Property, including general expenses for the business, sales and marketing expenses, utilities and fees (See the scheduled budget items provided for in the Projection). As expressed above, these expenses are generally constant, fixed operating expenses and have been static for many years. As such, the Debtor's projections should be accurate to within five percent (5%) of each projection and such variances are covered in the Stipulation.

### III.

### CONCLUSION

Debtor respectfully requests that the Court grant Debtor's motion for the use of the cash collateral available from the operation of the business to operate the business in

accordance with the attached stipulation. The Debtor seeks to use its cash collateral on an interim basis pending the Debtor's filing of a noticed motion for the continued use of cash collateral, if necessary. Debtor only seeks use on an interim basis for the month of November and December, with either a further stipulation with EWB or a noticed motion to be filed shortly and heard as soon as possible.

Dated: November 19, 2010                               /s/   John L. Smaha
                                                      John L. Smaha, Esq.
                                                      *Attorney for Debtor,*
                                                      Wave House Belmont Park, LLC

W:\Wave House Belmont\Emergency.Cash.Collateral\101.Motion.Cash.Collateral.wpd

---

EMERGENCY MOTION FOR USE OF CASH COLLATERAL
7