BARRY V. FREEMAN (Bar No. 33397)
DAVID M. POITRAS P.C. (Bar No. 141309)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067-4308
Telephone:     (310) 203-8080
Facsimile:      (310) 203-0567
Email:            dpoitras@jmbm.com

Attorneys for Secured Creditor,
East West Bank

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>WAVE HOUSE BELMONT PARK, LLC<br><br>Debtor and Debtor-In-Possession. | CASE NO. 10-19663-LT11<br><br>CHAPTER 11<br><br>**STIPULATION FOR INTERIM USE OF CASH COLLATERAL**<br><br>Date:    [To Be Set]<br>Time:   [To Be Set]<br>Judge:  Laura S. Taylor |

This Stipulation for Interim Use of Cash Collateral ("Stipulation") is made by and among Wave House Belmont Park, LLC, the debtor and debtor-in-possession ("Debtor"), and East West Bank ("EWB"), a secured creditor in this case, in reference to and in consideration of the following:

# RECITALS

A. On November 3, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code initiating this Chapter 11 case.

B. The Debtor's primary asset is a long term ground lease for the property and improvements thereon located at Mission Bay, San Diego, California commonly referred to as the Wave House Belmont Park (the "Property").

C. EWB is a secured creditor of the Debtor under a promissory note secured by a leasehold deed of trust covering the Property. The Debtor's obligations to EWB and the security therefor are more particularly described in the following documents:

(1) Security Agreement dated as of February 6, 2008 (the "Security Agreement");

(2) Note Secured by Leasehold Deed of Trust dated as of February 6, 2008 in the original principal sum of $17,000,000 (the "Note");

(3) Leasehold Deed of Trust With Assignment of Rents and Fixture Filing dated as of February 12, 2008, recorded in Official Records of San Diego County, California on February 12, 2008 as Instrument No. 2008-0073027 (the "Deed of Trust");

(4) UCC-1 Financing Statement filed with the California Secretary of State as Document No. 087153175209.

(5) Assignment of Leases and Rents dated as of February 12, 2008 and recorded on February 12, 2008 in the Official Records of San Diego County, California as Instrument No. 2008-0073028.

(6) Agreement - Percentage Estoppel Certificate, recorded on February 12, 2008 in the Official Records of San Diego County, California as Instrument No. 2008-0073029.

The foregoing are hereinafter collectively referred to as the "EWB Loan Documents."

D. The Deed of Trust against the Property in favor of EWB constitutes a first priority deed of trust against the Property.

E. As of the Petition Date, the amount due, owing and unpaid under the Note and Deed of Trust and other EWB Loan Documents was the approximate sum of $16,507,623.89, plus any accrued and accruing interest, and attorneys' fees and costs in accordance with and as allowed under the terms and provisions of the EWB Loan Documents and applicable law.

F. The Debtor acknowledges that it has investigated and believes, at this time without an evidentiary admission or finding of fact, that the EWB Bank Loan Documents grant EWB a valid, enforceable, perfected first priority interest in all rents, income, issues, profits and proceeds of the Property, all of which constitute EWB's cash collateral within the meaning of 11 U.S.C. §363 of the Bankruptcy Code.

G. The parties desire to enable the continued operation of the Property through the use of EWB's cash collateral on an interim basis in accordance with the terms, provisions and conditions of this Stipulation.

NOW, THEREFORE, the parties hereby stipulate and agree as follows:

## AGREEMENT

1. <u>Recitals</u>. The recitals are incorporated herein by this reference. The parties agree that the matters set forth in the recitals are true and correct to the best of their knowledge; however, the recitals do not constitute evidentiary admissions or findings of fact. The parties reserve the right to amend and/or change the recitals after additional investigation.

2. <u>Acknowledgment of Debt to EWB</u>. The Debtor acknowledges that it has investigated and that it believes EWB holds a valid, perfected, enforceable and unavoidable first priority security interest in the Property, and without limitation, all pre-petition rents, income, profits and proceeds of the Property in the Debtor's possession on the Petition Date, and all post-petition rents, income, profits and proceeds of the Property coming into the Debtor's possession after the Petition Date, as security for the obligations owing under the Note. EWB holds an absolute assignment of said rents, income, profits and proceeds of the Property, and said rents, income, profits and proceeds constitute EWB's cash collateral within the meaning of 11 U.S.C. §363(a) subject to the limitations on the use and disposition thereof of 11 U.S.C. §363(c). EWB has

asserted a claim against the Debtor's bankruptcy estate for the full amount due under the EWB Loan Documents, which claim, if allowed, shall be deemed to be fully secured as of the Petition Date based upon the initial valuations set forth in the Debtor's bankruptcy schedules. The Debtor further believes, at this time, that it has no set-offs, cross-claims, counterclaims or defenses to EWB's claims. This acknowledgement is not intended to be an evidentiary admission or a finding of fact.

3.      <u>Cash Collateral Defined</u>.  The term "Cash Collateral" as that term is used in this Stipulation is defined as all of the pre-petition rents, income, profits and proceeds of the Property in the Debtor's possession on the Petition Date and all post-petition rents, income, issues, profits and proceeds of the Property after the Petition Date.

4.      <u>Establishment of Approved Accounts and Utility Deposits</u>.  Upon approval of this Stipulation, the Debtor shall establish the following accounts for the following purposes:

(a)     <u>Reserve Account for Real Property Taxes, Insurance Premiums and Licensing Fees and Payment Thereof</u>.  The Debtor shall establish a separate account at a depository institution approved by the United States Trustee's Office to be designated as a reserve account for payment of real property taxes, licenses and insurance (the "Tax/Insurance Account"). The Debtor shall deposit on a monthly basis into the Tax/Insurance Account the pro rata amount necessary to timely and fully pay each installment of real property taxes and insurance premiums and all applicable licenses for the operation of the Property as such installments become due, and the Debtor shall pay all such real property tax installments and insurance premiums and all license fees when due. The Debtor shall at all times maintain in full force and effect policies of insurance covering the Property in accordance with the requirements of the EWB Loan Documents and naming EWB as mortgagee and loss payee as required by the terms and provisions of the EWB Loan Documents. All funds in the Tax/Insurance Account are and shall remain the Cash Collateral of EWB.

(b)     <u>Security Deposit Account</u>.  The Debtor shall establish a separate account at a depository institution approved by the United States Trustee's Office to be designated as a segregated account for tenant security deposits. Post-petition security deposits for post-petition leases shall be deposited into the Security Deposit Account and shall be accompanied by a written

identification of the amount of the deposit, the date the deposit was received and the identity of the tenant who made the security deposit. All funds in the Security Deposit Account are and shall remain EWB's Cash Collateral, subject to the rights of the tenants.

(c) <u>Operating Account</u>. The Debtor has established a Wells Fargo Bank account designated as the Operating Account for the Property into which the Debtor shall deposit all rents, income, profits and proceeds of the Property and maintain the amounts necessary to fund the monthly reasonable, ordinary and necessary expenses of maintaining and operating the Property in accordance with the First Interim Budget and subsequent budgets approved by EWB under the terms, provisions and conditions of this Stipulation. The funds in the Operating Account are and shall remain EWB Cash Collateral.

(d) <u>Excess Cash Collateral Account</u>. The Debtor has established a Wells Fargo Bank account designated as the Excess Cash Collateral Account into which the Debtor shall deposit all Cash Collateral in the Debtor's possession, and all Cash Collateral which shall hereafter come into the Debtor's possession in excess of the amounts needed to fund the Tax/Insurance Account, Security Deposit Account and Operating Account. The Excess Cash Collateral Account shall be a money market account or similar interest-bearing account, and all interest paid thereon shall be retained in the Excess Cash Collateral Account and shall be deemed a proceed or product of such Cash Collateral. The funds in the Excess Cash Collateral Account are and shall remain EWB's Cash Collateral.

5. <u>Payment of Operating Expenses and EWB Loan Payments for the First Interim Period.</u>

(a) For the period from the Petition Date through and including January 31, 2011 (the "First Interim Period"), the Debtor shall be entitled to use the Cash Collateral, without further order of the Court or written permission of EWB, to pay the reasonable, ordinary and necessary expenses of operating and maintaining the Property for the items and in the amounts set forth in the budget attached hereto as <u>Exhibit 1</u> and incorporated herein by this reference (hereinafter referred to as the "First Interim Budget"). In accordance with the First Interim Budget,

Exhibit 1, the Debtor shall pay the reasonable, ordinary and necessary expenses of operating and maintaining the Property as those expenses come due.

      (b)    The Debtor's use of Cash Collateral is expressly limited to the categories and the First Interim Budget approved under this Stipulation (and any subsequent budgets approved under this Stipulation for subsequent periods), except that expenses for a particular category (except utilities) may be 5% higher or lower for a particular month than those specified in the First Interim Budget or subsequent budgets so long as the total expenses for that category for the Interim Period (and any subsequent three-month budget period) shall not vary by more than 10% from the total amount budgeted for the period for that category. Utilities may vary as the needs of the Property require, subject to the Debtor providing EWB with appropriate verification of any increase in utility expenses in excess of the amounts provided.

      (c)    The Debtor shall further pay monthly loan payments to EWB in accordance with the EWB Loan Documents at the applicable pre-default rate of interest provided for in the EWB Loan Documents, commencing November 12, 2010. Nothing contained in this paragraph or in this Stipulation shall prejudice or limit in any way EWB's right to claim interest at the post-default rate provided for in the EWB Loan Documents and any other late charges or other sums recoverable under the EWB Loan Documents, or the Debtor's right to claim otherwise.

      (d)    The Debtor shall further pay quarterly payments due and owing to the United States Trustee established under 28 U.S.C. § 1930(a)(6). The quarterly fees are estimated by the Debtor at $6,500 based on approximately $1,000,000 in quarterly disbursements. The first payment shall be due shortly after December 31, 2010.

      6.    <u>Extension of Use of Cash Collateral by Stipulation after First Interim Period</u>.

The parties shall be entitled to extend the terms, provisions and conditions of this Stipulation for the Debtor's use of Cash Collateral from and after January 31, 2011 by written stipulation by and among EWB and the Debtor without further notice, hearing or order, with such extensions to be deemed authorized and approved by the order entered by the Bankruptcy Court approving this Stipulation under 11 U.S.C. §363(c) and Rule 4001 of the Federal Rules of Bankruptcy Procedure and any other applicable rule or statute so long as the following conditions

are met:

        (a)    The Debtor presents to EWB approximately 15 days prior to the expiration of the then-current stipulation for use of Cash Collateral a proposed budget for the following three-month period, in similar form to <u>Exhibit 1</u>, identifying with specificity the nature and amount of all expenses which the Debtor seeks authority to pay from the Cash Collateral. Said proposed budget shall provide for payment of operating expenses of the Property generally in the same categories identified in <u>Exhibit 1</u>.

        (b)    Within 7 days after the Debtor's submission of the proposed three-month budget, EWB shall advise the Debtor of its approval or disapproval of the proposed budget and the expenses set forth therein, or of its approval of the proposed budget subject to specific modifications, so long as the modified budget remains within the 10% plus or minus margin permitted in paragraph 6(a). The proposed budget provided to EWB under this paragraph shall be directed to:

> Maita Prout
> East West Bank
> 135 N. Los Robles Avenue, 7th Floor
> Pasadena, California 91101
> Email: maita.prout@eastwestbank.com

With a copy to:

> David M. Poitras
> Jeffer Mangels Butler & Mitchell LLP
> 1900 Avenue of the Stars, 7th Floor
> Los Angeles, California 90067
> Email: dpoitras@jmbm.com

EWB's responses to the proposed budget shall be directed to:

> Bryan Levy
> Wave House Belmont Park, LLC
> 3146 Mission Boulevard, Suite F
> San Diego, California 92109
> Email: bryan.levy@wavehouse.com

John L. Smaha
Smaha Law Group
7860 Mission Center Court, Suite 100
San Diego, California 92108
Email: jsmaha@smaha.com

(c)     Upon written notice by EWB approving a new three-month budget and agreeing to extend this Stipulation for the three-month period specified in that approved budget, this Stipulation and the order approving it shall be deemed to be automatically extended to govern the Debtor's use of Cash Collateral for the three-month period specified in the approved budget. Budgets approved under this paragraph are referred to in this Stipulation as "subsequent budgets."

(d)     Nothing contained in this paragraph 6 or in this Stipulation shall obligate EWB to extend the terms of this Stipulation, to approve any proposed budgets for any period after the Interim Period and/or to authorize the Debtor's use of Cash Collateral after January 31, 2011.

(e)     Nothing contained in this paragraph 6 or in this Stipulation will be construed to limit the Debtor's right to request an order of the Bankruptcy Court upon motion after notice and hearing authorizing it to use Cash Collateral.

7.      <u>Leasing Commissions</u>. No Cash Collateral shall be used by the Debtor to pay for leasing commissions except upon prior approval of EWB or by order of the Bankruptcy Court upon motion after notice and a hearing. All proposed post-petition leases for the Property shall be submitted to EWB and EWB shall have twelve (12) business days to review the proposed lease and advise the Debtor of its approval or disapproval thereof and approval or disapproval of any leasing commissions associated therewith.

8.      <u>No Insider Payments</u>. The Debtor shall not make any payments of Cash Collateral to any insider of the Debtor except upon EWB's prior written consent or the entry of an order of the Bankruptcy Court upon motion after notice and a hearing to the extent permitted by law.

9.      <u>Limit on Capital Improvements</u>. The Debtor may not use Cash Collateral for the purpose of making any renovation, investment or improvement of or in connection with the

PRINTED ON
RECYCLED PAPER

Property for a single item in excess of $2,500 and/or an aggregate expense in excess of $5,000.00 per month without the prior written authorization of EWB or order of the Bankruptcy Court approving such expenditure upon motion of the Debtor after notice and a hearing.

10. <u>No Payments to Creditors</u>. Except as authorized in this Stipulation, no payments of any kind to any person or entity holding a lien on the Property junior to the interests of EWB or to any pre-petition unsecured creditors of the Debtor shall be made, except by order of the Bankruptcy Court upon motion after notice and a hearing to the extent permitted by law.

11. <u>Replacement Lien</u>. Without limitation on the effect of the EWB Loan Documents and the absolute assignment of rents contained therein, and as adequate protection for the use of Cash Collateral in addition to the monthly interest payments and restrictions on the Debtor's use of Cash Collateral provided for herein, EWB shall be and hereby is granted a replacement lien to secure any diminution in the value of cash collateral caused by the Debtor's use thereof, and security interest in, all post-petition rents (subject to the uses permitted by this Stipulation), income, issues, proceeds and profits produced by and/or derived from the Property, which replacement lien and security interest shall have the same priority, extent and validity as EWB's security interest or other interest in the Cash Collateral used by the Debtor. The replacement lien and security interest granted herein are valid, enforceable and fully perfected, and no filing or recordation or any other act in accordance with any applicable local, state or federal law is necessary to create or perfect such lien and security interest. EWB may, in its sole discretion, file such financing statements, notices of liens or similar instruments. If EWB chooses, in its sole discretion, to file such financing statements, notices of liens or similar instruments, all such documents shall be deemed to have been filed or recorded on the Petition Date whether or not so filed or recorded on such date, and the automatic stay of section 362 of Bankruptcy Code shall be deemed vacated and modified to permit the filing of any of the foregoing.

12. <u>Accountings and Reports</u>.

(a) On or before the 20th day of each month, commencing December 20, 2010, the Debtor shall send to counsel for EWB copies of all reports, statements, and/or accountings delivered by the Debtor to the United States Trustee as required under the local rules and practice of

the Bankruptcy Court for the Southern District of California, including but not limited to the real property questionnaire, interim statements and operating reports. If the Debtor fails to prepare and file the statements, reports and/or accountings required by the United States Trustee, the Debtor shall nevertheless send to EWB on or before the 20th day of each month a detailed accounting of the prior month's income and expenses, which accounting shall include all information required in the United States Trustee's reports, statements and accountings.

　　　　　　(b)　　In addition to the reports filed with the United States Trustee's Office, on or before the 20th day of the month commencing December 20, 2010, the Debtor shall send to EWB copies of the Debtor's internal income and expense statements and profit and loss statements and reports showing any variance between the Budgets and the actual usage.

　　　　13.　　Inspections. No later than five (5) business days following a written request from EWB, the Debtor shall provide access to and make available such financial and operating information as representatives of EWB shall reasonably request from time to time and which can reasonably be made available, including, without limitation, all books and records relating to the Property, which requests shall be made no more frequently than once every 30 days. Representatives of EWB may inspect the premises of the Property without notice; provided, however, that any inspection of any premises leased to a tenant shall be made at the reasonable convenience of said tenant after five days' written notice to the Debtor and to said tenant. Upon five days' written notice to the Debtor, EWB shall be entitled to have its appraiser and/or environmental inspector visit the Property to inspect and appraise the Property, and the Debtor shall cooperate in providing said appraiser and/or environmental inspector full access to the Property and with copies of leases and other rental data concerning the Property as EWB may reasonably request.

　　　　14.　　Default by Debtor.

　　　　　　(a)　　If the Debtor fails to fully and timely perform its payment obligations under paragraph 5(c) of this Stipulation ("payment default"), then the Debtor shall have committed a payment default under this Stipulation. In the event that EWB asserts a payment default by the Debtor, it shall give written notice of said payment default to the Debtor and Debtor's counsel by hand delivery or email, giving the Debtor five (5) business days to cure, and the Debtor's right to

use Cash Collateral shall immediately cease at the end of five business days from the giving of such notice if said payment default is not cured prior to the expiration of said five business day notice and cure period. Thereafter, the Debtor may only use Cash Collateral upon entry of an order of the Bankruptcy Court upon motion after notice and a hearing.

    (b) If the Debtor fails to fully and timely perform any of its accounting and reporting obligations under paragraph 12 of this Stipulation ("reporting default"), the Debtor shall have committed a reporting default under this Stipulation. In the event that EWB asserts a reporting default by Debtor, it shall give written notice of said reporting default to the Debtor and Debtor's counsel by hand delivery or email, giving the Debtor ten (10) calendar days to cure, and the Debtor's right to use Cash Collateral shall immediately cease ten (10) calendar days from the giving of such notice if said default is not cured prior to the expiration of said ten-day notice and cure period. Thereafter, the Debtor may only use Cash Collateral upon the entry of an order of the Bankruptcy Court upon motion after notice and a hearing.

    (c) If the Debtor fails to fully and timely perform any term, condition or covenant of this Stipulation, other than the payment or accounting and reporting obligations referred to in subparagraphs (a) and (b) above, the Debtor shall have committed a non-curable default under this Stipulation. In the event that EWB asserts a non-curable default by the Debtor, it shall give written notice of EWB's contention that a non-curable default has occurred and that the Debtor's right to use Cash Collateral shall immediately and automatically cease five (5) business days from the giving of such notice to the Debtor and Debtor's counsel by hand delivery or email. If the Debtor disputes that a non-curable default has occurred, the Debtor may apply to the Court to resolve the dispute and determine whether such a non-curable default has occurred. If the Court finds that a non-curable default has occurred, the Debtor may only use Cash Collateral upon the entry of an order of the Bankruptcy Court upon motion after notice and a hearing.

    (d) All notices of default under this paragraph 14 shall be given to the Debtor and Debtor's counsel by giving such notice to Bryan Levy at Wave House Belmont Park and John Smaha, Smaha Law Group, by hand delivery or email at the addresses set forth in paragraph 6(b) above.

In addition to the foregoing, the occurrence of the following shall constitute and event of default under this Stipulation:

(e) The Debtor shall use cash collateral for any purpose or in any amount not permitted hereunder;

(f) Any post-petition lender to the Debtor or any other creditor of the Debtor shall acquire a post-petition security interest in or lien on any property of the Debtor or the Debtor's estate having priority over, or equal to, the security interest and liens in the Property held by EWB, unless EWB consents thereto;

(g) The Debtor's chapter 11 case shall be dismissed or converted to a case under chapter 7 of the Bankruptcy Code;

(h) A trustee is appointed in this bankruptcy case;

(i) Entry of an order rejecting or terminating the Debtor's lease for the Property; or

(j) The automatic stay is lifted to allow any party other than EWB to foreclose upon the Property or terminate the Debtor's lease for the Property.

15. <u>No Waiver of Default or Violation of "One-Action Rule"</u>. Payments received by EWB pursuant to this Stipulation shall be credited to interest accruing under the Note. EWB's entry into this Stipulation, or the receipt and acceptance of payments under this Stipulation shall not be deemed a waiver or limitation in any way of EWB's right to demand immediate payment of the entire balance due under their Loan Documents. EWB's entry into this Stipulation, or the receipt by EWB of payments or other benefits under this Stipulation, shall in no way represent an "action" for the purposes of the "one action rule" or any violation of the "security first" aspect of California Code of Civil Procedure section 726. The Debtor expressly acknowledges, stipulates and agrees that all payments made to and received by EWB under this Stipulation are made to EWB voluntarily by the Debtor, and EWB may apply such payments to the outstanding amounts due under the obligations owed to it as allowed by their Loan Documents. Additionally, nothing contained in this Stipulation shall constitute a waiver or abridgement of EWB's right, if any, to seek a deficiency judgment or seek a deficiency claim in this bankruptcy in accordance with law. The

receipt and application of the payment due EWB under this Stipulation shall not diminish or prejudice EWB's right, if any, to obtain a deficiency judgment to the extent permitted by California law or to assert a deficiency claim to the extent permitted by §1111(b) of the Bankruptcy Code, Title 11 of the United States Code, except that the payments received shall be credited to the amounts due under the EWB Loan Documents.

16. **No Waiver of Rights**. EWB does not consent to any surcharge of its collateral. No delay or failure of either party to this Stipulation in exercising any right, power or privilege, or any single or partial exercise thereof, or any abandonment or discontinuance of steps to enforce such a right, power, or privilege, shall be deemed to be a waiver of any right, power, or privilege. The rights and remedies of the parties to this Stipulation are cumulative and not exclusive. Any waiver, permit, consent or approval of any kind by either party to this Stipulation of any breach or default hereunder, or any such waiver of any provision or condition hereof, or further extension of time, or modification or amendment hereof, must be in writing and shall be effective only to the extent set forth in writing. All Parties reserve all rights and remedies not otherwise inconsistent herewith, pursuant to the loan documents, the Bankruptcy Code and applicable law. Nothing contained herein shall prevent the Debtor from seeking additional usages of cash collateral not otherwise provided for herein, or to amend budgets pursuant to application and court order, or the ability to EWB to object to any such usages or amendments to Debtor's budgets in any such proceeding. The Debtor acknowledges the due validity and perfection of EWB's claim and security interests in the Property and any Official Creditor's Committee or any other creditor or party in interest shall have sixty (60) days from November 18, 2010 to challenge the validity and perfection of such claims and liens and, if no such challenge is brought, the validity and perfection of such claims and liens shall be duly acknowledged and not subject to further challenge by any creditor or party interest.

17. **Further Assurances**. All parties, at their expense, will execute, acknowledge, and deliver, or cause to be executed, acknowledged and delivered, all such additional instruments and documents and will take such further action as either party may from time to time reasonably request for the better assurance and preservation of the parties' rights hereunder.

18. <u>Assignability</u>. This Stipulation shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

19. <u>Binding on Trustee</u>. The terms and conditions of this Stipulation shall be res judicata and binding upon any trustee appointed herein or in any case to which this case may be converted.

20. <u>Other Remedies Available to EWB</u>. The purpose of this Stipulation is to establish procedures for the monitoring and expenditure of the Cash Collateral. This Stipulation is made with an express reservation of rights by EWB to pursue any and all rights and remedies EWB may have under the Bankruptcy Code and the EWB Loan Documents, including, but not limited to, seeking adequate protection of EWB's interest in the Property, relief from the automatic stay to foreclose on its interest in the Property, or an order dismissing or converting this bankruptcy case. Nothing contained in this Stipulation and the order thereon shall be deemed or construed to be an admission that EWB is adequately protected. Moreover, except as otherwise expressly set forth in this Stipulation, nothing contained in this Stipulation and the order thereon shall be deemed or construed to limit in any way, any of the Debtor's legal rights or remedies in this bankruptcy proceeding or otherwise in accordance with applicable law.

21. <u>Cure Agreement</u>. The Debtor has filed an adversary proceeding and an Emergency Motion for Extension of the Automatic Stay Provided by 11 U.S.C. Section 362 to Third Party East West Bank or, In the Alternative, Relief Under 11 U.S.C. Section 105 (the "Emergency Motion"). The City of San Diego (the "City") has alleged that there is a monetary default by the Debtor based upon the Debtor's failure to pay prepetition rent in the amounts of $82,589.03 and $7,081.96. Prior to the Petition Date, the City issued a notice of default to the Debtor and EWB concerning the prepetition rents allegedly owed to the City, which notice (and the lease itself) provides the parties with 30 days to cure the alleged default (in the case of EWB and notwithstanding the Debtor's chapter 11 filing the City agreed that EWB had through and including November 19, 2010 to cure any default set forth in the notice of default). By order entered November 19, 2010, the Emergency Motion was granted on an interim basis, and the time for EWB to cure any default set forth in the notice was extended until further order of the Bankruptcy Court

(the "105 Order"). As of the date of this Stipulation, the 105 Order is not a final order. Based upon the foregoing, EWB may, in its discretion, advance moneys to cure the alleged prepetition monetary defaults under the Debtor's lease for the Property with the City. In the event EWB advances funds to cure the alleged prepetition monetary defaults under the Debtor's lease for the Property with the City, such advances will be made pursuant to section 9.03 of the Deed of Trust and shall be secured by the Deed of Trust and EWB reserves the right to seek allowance of any such advance as a super-priority administrative claim in accordance with Section 507(b) of the Bankruptcy Code.

22. <u>Neutral Construction</u>. Each of the parties hereto has been involved in the negotiation, review, and execution of this Stipulation, and each has had the opportunity to receive independent legal advice from attorneys of its choice with respect to the advisability of making and executing this Stipulation. In the event of any dispute or controversy regarding this Stipulation, the parties hereto shall be considered to be the joint authors of this Stipulation, and no provision of this Stipulation shall be interpreted against a party hereto because of authorship.

23. <u>Headings</u>. The parties acknowledge to one another that the headings set forth herein are for convenience only and shall not be used to limit, define, or interpret their rights and responsibilities hereunder.

24. <u>Integration</u>. Except as expressly provided in this Stipulation, this Stipulation is the final written expression and complete and exclusive statement of all of the agreements, conditions, promises and covenants between the parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements, negotiations, representations, understandings and discussions between the parties and/or their respective counsel with respect to the subject matter covered hereby. Any amendment or modification to this Stipulation, in order to be legally binding, must be in writing specifically referring to the Stipulation and signed by duly authorized representatives of both parties hereto.

25. <u>Execution</u>. Any party executing this Stipulation in a representative capacity is duly authorized and empowered to do so.

26. <u>Court Approval</u>. This Stipulation shall be submitted forthwith to the Bankruptcy Court for approval, and, in that regard, the Debtor and/or EWB may give such notice and opportunity to be heard as is required under the Federal Rules of Bankruptcy Procedure and other applicable law.

DATED: November 19, 2010          JEFFER MANGELS BUTLER & MITCHELL LLP


By: /s/ David M. Poitras
         DAVID M. POITRAS P.C.
Attorneys for Secured Creditor EAST WEST BANK


DATED: November 19, 2010          SMAHA LAW GROUP


By: /s/ John L. Smaha
         JOHN L. SMAHA
Attorneys for Debtor WAVE HOUSE BELMONT PARK, LLC

7411782v1

- 16 -          STIPULATION FOR INTERIM USE OF CASH COLLATERAL

PROFIT AND LOSS STATEMENT
Wave House Belmont Park LLC
Debtor-in-Possession, 10-19663-11

| | Month November 2010 Estimate | Month December 2010 Estimate | Month January 2011 Estimate | ASSUMPTIONS: |
|---|---:|---:|---:|---|
| **Revenue** | | | | |
| Rent - Non related tenants | $ 103,914 | $ 127,481 | $ 126,901 | |
| CAM - Non related tenants | $ 22,508 | $ 32,562 | $ 32,562 | |
| Marketing Fund - Non related tenants | $ 2,945 | $ 4,255 | $ 4,255 | |
| Utilities - Non related tenants | $ 1,125 | $ 1,125 | $ 1,125 | |
| SUBTOTAL | $ 130,492 | $ 165,423 | $ 164,843 | |
| Rent - Wave House companies | $ 76,399 | $ 77,562 | $ 105,666 | |
| CAM - Wave House companies | $ 45,327 | $ 45,327 | $ 45,327 | |
| Marketing Fund - Wave House Companies | $ 5,912 | $ 5,912 | $ 5,912 | |
| SUBTOTAL | $ 127,638 | $ 128,801 | $ 156,905 | |
| **Total Revenue** | $ 258,130 | $ 294,224 | $ 321,748 | All income based on Rent roll and lease abstracts |
| | | | | |
| **Labor & Overhead** | | | | |
| Payroll, taxes and fees | $ 29,000 | $ 29,000 | $ 29,000 | 5 FT & 2 PT Housekeeping/4 FT & 2 PT Maintenance |
| Workers Comp | $ 2,600 | $ 2,600 | $ 2,600 | Calculated based on payroll |
| Health Insurance | $ 1,600 | $ 1,600 | $ 1,600 | Based on employer share of premium at 70% |
| Misc. | $ 250 | $ 250 | $ 250 | |
| **Total Labor and Overhead** | $ 33,450 | $ 33,450 | $ 33,450 | |
| | | | | |
| **Operating Expenses** | | | | |
| Bank charges | $ 175 | $ 175 | $ 175 | Standard service fees |
| R&M/HVAC/Landscaping/Pest Control | $ 5,500 | $ 7,500 | $ 7,000 | Contracts for services and std repairs |
| Supplies | $ 2,000 | $ 2,000 | $ 2,000 | Based on historical cost |
| Misc. | $ 500 | $ 500 | $ 500 | |
| **Total Operating Expenses** | $ 8,175 | $ 10,175 | $ 9,675 | |
| | | | | |
| **Administrative & General** | | | | |
| Contract Services - Security | $ 11,000 | $ 11,000 | $ 11,000 | Per contract |
| Telephone & Internet | $ 500 | $ 500 | $ 500 | Based on historical cost |
| Postage | $ 100 | $ 100 | $ 100 | Based on historical cost |
| Licenses and Permits | $ - | $ - | $ - | |
| Misc. | $ 300 | $ 300 | $ 300 | |
| **Total Administrative & General** | $ 11,900 | $ 11,900 | $ 11,900 | |
| | | | | |
| **Occupancy Costs** | | | | |
| Property Taxes | $ 15,000 | $ 15,000 | $ 15,000 | Based on annual tax bill $180K |
| Water | $ 3,500 | $ 3,500 | $ 2,500 | Based on historical cost |
| Gas & Electric | $ 9,000 | $ 11,900 | $ 8,000 | Based on historical cost |
| Trash | $ 3,000 | $ 2,900 | $ 2,700 | Based on historical cost |
| Insurance | $ - | $ 15,000 | $ 8,000 | Base on historical cost |
| Rent - Ground Lease City of San Diego | $ 5,833 | $ 5,833 | $ 5,833 | Based on historical cost |
| Misc. | $ 300 | $ 300 | $ 300 | |
| **Total Occupancy Costs** | $ 36,633 | $ 54,433 | $ 42,333 | |
| | | | | |
| **Marketing** | | | | |
| Marketing | $ 20,000 | $ 7,500 | $ 7,500 | Required to be spend per tentant leases |
| **Total Marketing Costs** | $ 20,000 | $ 7,500 | $ 7,500 | |
| | | | | |
| **Total Expenses** | | | | |
| Expenses WHBP | $ 110,158 | $ 117,458 | $ 104,858 | |
| **Total Expenses-CAM** | $ 110,158 | $ 117,458 | $ 104,858 | |
| | | | | |
| **Non-CAM Expenses** | | | | |
| Labor & Overhead | $ - | $ - | $ - | |
| Operating Expenses | $ 7,500 | $ 7,500 | $ 7,500 | Based on historical cost |
| Legal, Accounting and Professional (with approval) | $ 12,000 | $ 13,000 | $ 13,500 | Based on estimates |
| Management Services Fees | $ 10,325 | $ 10,325 | $ 11,769 | 4% of Sales for Accounting, IT, HR & Admin svcs. |
| Marketing | $ 1,000 | $ 1,000 | $ 1,000 | Non-tenant related |
| **Total Expenses-Non CAM** | $ 30,825 | $ 31,825 | $ 33,769 | |
| **All Expenses** | $ 140,984 | $ 149,284 | $ 138,627 | |
| | | | | |
| **Net Operating Income - Profit or (Loss)** | $ 117,146 | $ 144,940 | $ 183,121 | |
| | | | | |
| Mortgage payments | $ 111,000 | $ 111,000 | $ 111,000 | Current payment to East West Bank |
| Equipment Lease payments | $ 5,060 | $ 5,060 | $ 5,060 | Copiers and security camera system leased |
| Taxes | | | | |
| Total Cash payouts | $ 116,060 | $ 116,060 | $ 116,060 | |
| | | | | |
| Cash available | $ 1,086 | $ 28,880 | $ 67,061 | |
| | | | | |
| Plunge Structure maintenance | $ - | $ 21,000 | $ 21,000 | Reserve required to make repairs/improvements |
| Lease section 305, paragraph 9, capital requirements @ 2.5% | $ 20,041 | $ 14,917 | $ 18,122 | As required by lease with City of San Diego |
| Accumulated cash reserve-in Bank | $ (18,955) | $ (25,991) | $ 1,948 | |